UNITED FIRE & CASUALTY COMPANY, Plaintiff-Appellant,

v.

Gayle L. KLEPPE, Beau Wold, Defendants-Respondents,†

EMPLOYERS INSURANCE OF WAUSAU, State of Wisconsin Department of Industry, Labor & Human Relations, Workers' Compensation Division, Defendants.

Court of Appeals

*No. 91-1231-FT. Submitted on briefs September 3, 1991.—Decided January 14, 1992.*

(Also reported in 480 N.W.2d 537.)

†Petition to review granted.

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *Michael F. O'Brien* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

On behalf of defendants-respondents, the cause was submitted on the brief of *Lori J. Franson* of *Guelzow, Senteney & Franson Ltd.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   United Fire and Casualty Company appeals a declaratory judgment voiding part of its policy that reduces the $300,000 uninsured motorist (UM) coverage by the sums already paid or payable to its insured, Gayle Kleppe, by her employer's workers' compensation carrier.[1] The trial court declared that the UF&C policy violates sec. 632.32(4)(a), Stats., that requires motor vehicle insurance policies to provide minimum mandatory UM coverage of $25,000 per person and $50,000 per accident. The court did not reach the issue of whether the same limit of liability clause violates the collateral source rule.

Because Kleppe's damages are undetermined, it is premature to decide whether enforcement of the UF&C policy's limit of liability provision has the effect of violating the mandatory UM coverage statute. We also con-

---

[1]This is an expedited appeal under Rule 809.17.

clude that the collateral source rule has no application here. We therefore reverse the declaratory judgment.

Gayle Kleppe, an elementary school principal, was injured in the course of her employment as the result of a motor vehicle accident with an uninsured motorist. Kleppe and her husband, Beau Wold, (collectively Kleppe), made a claim for all of their damages under a UF&C motor vehicle insurance policy that provides UM benefits with a limit of $300,000 per accident. The extent of Kleppe's damages have not been established. In the meantime, Kleppe collected and will continue to collect workers' compensation from Employers Insurance of Wausau in payment of certain of her damages.[2] Because Kleppe sought recovery for her medical bills paid or payable by worker's compensation insurance, UF&C sought a declaratory judgment enforcing the "limit of liability" provision in its policy. The policy provides as follows:

PART C—UNINSURED MOTORISTS COVERAGE

. . ..

---

[2]Employers Insurance originally sought a subrogation recovery against UF&C pursuant to sec. 102.29, Stats., but stipulated to dismiss its claim. The stipulation was apparently based upon a recognition that the worker's compensation recovery statute is limited to tort actions against third parties, and the UM payment to Kleppe under the UF&C policy is purely a matter of contract. Although the stipulation and order of dismissal do not set forth the reasoning, the dismissal followed the filing of briefs alluding to authority for the proposition that sec. 102.29(1), provides the workers' compensation carrier a cause of action against the tortfeasor only. *See Bergren v. Staples,* 263 Wis. 477, 57 N.W.2d 714 (1953); *Kottka v. PPG Industries,* 130 Wis. 2d 499, 388 N.W.2d 160 (1986); John D. Neal & Joseph Danas, Jr., *Worker's Compensation Handbook,* State Bar of Wisconsin (CLE) (3d ed. 1990).

LIMIT OF LIABILITY

. . ..

B.  Any amounts otherwise payable for damages under this coverage [uninsured motorist] shall be reduced by all sums:

1.  Paid . . . by or on behalf of persons . . . who may be legally responsible. This includes all sums paid under Part A [liability coverage]; and

2.  Paid or payable because of the "bodily injury" under any of the following or similar law:

a.  workers' compensation law . . ..

C.  Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A [liability coverage].

The circuit court held this reciprocal reducing clause to be invalid, citing prior case law interpreting sec. 632.32(4), Stats. Prior decisions have held reducing clauses virtually identical to the clause found in this policy in violation of the mandatory UM coverage of sec. 632.32(4)(a).[3] Those decisions, however, were expressly grounded upon the fact that reduction in coverage would have breached the legislative policy underlying the UM statute. The legislature intended to guarantee coverage to the injured party as if the uninsured motorist had been insured by the statutory minimums, presently $25,000 per person and $50,000 per accident. In each decision holding the clause unenforceable, the insured

---

[3]Section 632.32(4)(a) provides:

Required Uninsured Motorist and Medical Payments Coverages. Every policy of insurance subject to this section . . . shall contain therein . . . provisions . . . [f]or the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . in limits of at least $25,000 per person and $50,000 per accident.

suffered damages greater than the minimum mandatory coverage provided by the policy, and the reducing clause had the effect of lowering policy payments below those minimums.

In *Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 405 N.W.2d 327 (1987), the vehicle policy under consideration contained a reducing clause almost identical to UF&C's clause. In *Nicholson*, the insurer tried to use the limit of liability provision to reduce the coverage payable even though that would no longer place the injured party in the same position as if the uninsured tortfeasor had been minimally insured. *Id.* at 594, 405 N.W.2d at 332. In *Nicholson*, the plaintiff, a passenger in the insured vehicle, suffered damages in excess of a half million dollars attributable to the negligence of an uninsured motorist. The Home Insurance Company policy in question provided minimum mandatory UM limits of $15,000 per person and liability limits of $50,000 per person.[4] Although Home Insurance paid the entire $15,000 UM coverage to the plaintiff, it sought to reduce its $50,000 liability coverage payable to the plaintiff by the $15,000 paid, or to $35,000.

The *Nicholson* court recited the plaintiff's argument: Her damages were in excess of the combined total

[4]The minimum mandatory UM coverage of sec. 632.32(4)(a), Stats. (1979), in effect at the time of the *Nicholson* decision, was $15,000 per person and $30,000 per accident. Although it is irrelevant to our decision in this case, we note for the sake of accuracy that the uninsured motorist in *Nicholson* was ultimately exonerated of any negligence by a jury. The *Nicholson* court noted that the jury's finding had no bearing on the appeal because the insurance company paid the uninsured motorist coverage of $15,000 prior to trial and the parties agreed that Home Insurance could not seek to recoup payment on those grounds.

of the separate liability and uninsured motorist coverages, and the reducing clause *effectively* violated the mandate of the UM statute and was therefore unenforceable, even though the actual reduction was applied to the liability coverage. *Id.* at 590-91, 405 N.W.2d at 330-31. The court found the plaintiff's argument persuasive and accepted it. *Id.* at 591, 405 N.W.2d at 331. The crucial requirement is that the policy "*provide uninsured motorist coverage so that the injured party is guaranteed recovery as if the uninsured tortfeasor was minimally insured.* [And] the injured party must be entitled to the proceeds of uninsured motorist coverage free from any reductions contingent solely on the fact that a negligent uninsured motorist was a tortfeasor." *Id.* at 604, 405 N.W.2d at 336 (emphasis supplied).

Contrary to Kleppe's arguments, *Nicholson* does not declare the reducing clause invalid for all purposes: "Sec. 632.32(4)(a) is silent about reducing clauses; it neither authorizes nor prohibits them." *Id.* at 591, 405 N.W.2d at 331. Any reduction in Kleppe's coverage is not attributable to the fact of an uninsured negligent tortfeasor as was the case in *Nicholson.* Instead, the reduction here would be attributable to the fact that part of Kleppe's damages were paid through another source.

This court applied *Nicholson* to a different fact situation in *Niemann v. Badger Mut. Ins. Co.*, 143 Wis. 2d 73, 420 N.W.2d 378 (Ct. App. 1988). The plaintiff in *Niemann* suffered damages in excess of $50,000 and was insured by two separate auto policies with the minimum required $25,000 UM limits in each policy. One of the insurers paid its coverage. Badger Mutual, however, in reliance upon the fact that the plaintiff had received some $32,500 in workers' compensation benefits through

his employer, refused to pay. Instead, it sought to apply the limit of liability clause similar to that found in Kleppe's policy, reducing UM payments by any amounts paid under workers' compensation law. *Id.* at 76–78, 420 N.W.2d at 380. Enforcement of the reducing clause would have reduced Badger Mutual's UM coverage below the statutory minimums. If the insured were not entitled to the proceeds under the UM coverage without the reductions, he would have been treated differently than if the negligent tortfeasor had been minimally insured. *Id.* 78, 420 N.W.2d at 381. Kleppe would be in the position of the insured in *Niemann* only if UF&C seeks to reduce the UM coverage below the statutory minimums. Absent that result in the present circumstances, sec. 632.32(4)(a), Stats., is not violated. We note that UF&C concedes that Kleppe's workers' compensation benefits may only be subtracted from her total damages rather than from the policy limits, consistent with the holding in *Wood v. American Fam. Mut. Ins. Co.,* 148 Wis. 2d 639, 436 N.W.2d 594 (1989). This method of measuring benefits will come into play if Kleppe's damages are ultimately found to exceed the $300,000 policy limits.[5]

Because it declared the limit of liability clause void for violation of the UM coverage statute, the circuit court declined to decide whether the collateral source rule entitled Kleppe to collect her medical expenses a second time. The issue could surface again, however, if Kleppe's damages, after subtraction of her workers' com-

---

[5]While we distinguish prior case law invalidating the reducing clause found here, so far as we can determine, our supreme court has never had the occasion to address the clause in context of these facts. Because there are significant public policy and insurance contract considerations at stake, a final resolution by the supreme court would be salutary.

pensation benefits, do not reduce UM coverage below the $25,000/$50,000 minimums.

The rationale for the collateral source rule is that an injured party's investment in insurance should not inure to the benefit of the tortfeasor. *Campbell v. Sutliff,* 193 Wis. 370, 374–75, 214 N.W. 374, 376 (1927). The traditional statement of the rule is this: "[A]n accident insurance policy, *in the absence of any express provision . . . to the contrary,* is held to be an investment contract [under which] the insurance company is not subrogated to the rights of the insured [upon payment]." *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 578, 266 N.W.2d 326, 329 (1978) (quoting *Patitucci v. Gerhardt,* 206 Wis. 358, 361, 240 N.W. 385, 386 (1932) (emphasis supplied)). The *Rixmann* decision extended the rule to include the plaintiff's health insurance policy, but did so in the absence of a subrogation clause to the contrary in the policy.

The collateral source rule has no application to the present circumstances. This is not an attempt by a tortfeasor to obtain a benefit from the insured's investment in insurance. This dispute is strictly a matter of contract between the insurer and its insured. It has been said that the collateral source rule arises only in tort cases and is not used at all in contract claims. Dan B. Dobbs, Handbook on the Law of Remedies, § 8.10 at 587 (1973) (citing *United Protective Workers v. Ford Motor Co.,* 223 F.2d 49 (7th Cir. 1955)).

Further, even in those tort cases where the rule is otherwise applicable, the insurer has the right to expressly contract to avoid double coverage. This right is recognized in the seminal case invoking the collateral source rule, *Gatzweiler v. Milwaukee Elec. Ry. & Light*

852

*Co.,* 136 Wis. 34, 39, 116 N.W. 633, 634 (1908), and repeated in *Rixmann,* 83 Wis. 2d at 578, 266 N.W.2d at 329.

Kleppe finally suggests that the reducing clause violates the stacking statute, sec. 631.43(1), Stats. This statute provides:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

This statute has no application here. The "insured" under a workers' compensation policy is the employer, and the employee is an applicant or claimant. See *Van Valin v. Industrial Comm'n,* 15 Wis. 2d 362, 112 N.W.2d 920 (1962). Even if this statute were applicable, it does not provide for a double recovery. It merely provides that the insured is entitled to the full amount of her damages, and may stack the policies to the extent of the aggregated UM coverage. *Welch v. State Farm Mut. Auto Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985). This is not a stacking case. Kleppe is not indemnified as an insured under two policies, and she seeks double recovery rather than the full amount of her damages.

In summary, UF&C may limit its liability and reduce its coverage to the extent of Kleppe's workers' compensation benefits, provided the reduction does not effectively violate sec. 632.32(4)(a), Stats. We therefore

reverse as premature the judgment voiding the limit of liability clause.

*By the Court.*—Judgment reversed.