Philip ANDERSON and Anne Anderson, Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 92–3219. Submitted on briefs June 11, 1993.—Decided August 18, 1993.*

(Also reported in — N.W.2d —.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Anthony L. O'Mally* of *Zacherl, Wehner & O'Malley, S.C.* of Fond du Lac.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ronald L. Lampe* of *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. The issue on appeal is whether Philip Anderson is entitled to recover medical expenses under his motor vehicle insurance policy issued by American Family Mutual Insurance Company where he has already been made whole for all of his damages.[1] Anderson contends that the policy's medical expense coverage provisions and the collateral source rule entitle him to such payment. American

---

[1] Actually, American Family issued two policies to Anderson. Since the language of both policies is identical and since American Family does not dispute that both policies apply to the accident, we will treat them as one policy for purposes of this decision.

Family concedes that although the policy does not expressly forbid such payments, the law precludes such double recovery.

By declaratory judgment, the trial court ruled in American Family's favor. We conclude that the language of the policy permits Anderson to recover his medical expenses under the American Family policy. Therefore, we do not directly address the application of the collateral source rule to this case.

The relevant facts are undisputed.[2] American Family issued a "Family Car Policy" to Anderson. In separate sections, the policy provided liability, medical expense, and uninsured motorist coverage. By separate endorsement, the policy also provided underinsured motorist coverage. American Family charged separate premiums for each of these coverages. We will discuss the specific language of the policy when we address the appellate issue.

On May 20, 1988, Anderson was injured when his vehicle, insured by American Family, collided with a vehicle operated by Richard Hanke. Anderson sued Hanke. Because Anderson's claimed damages exceeded Hanke's available liability insurance coverage, Anderson amended his complaint to allege an underinsurance claim against his own insurer, American Family, and to seek a declaration of his rights under the American Family policy.

Eventually, Hanke's insurers paid Anderson their combined policy limits of $75,000 and Anderson dismissed his action against Hanke.[3] Thus, the only issues remaining were Anderson's underinsurance and

---

[2] Although there is more to the background and procedure of this case, we recite only that relevant to the appellate issue.

[3] The trial court conducted a hearing regarding the proposed settlement pursuant to *Vogt v. Schroeder*, 129 Wis. 2d 3,

declaratory judgment claims against American Family.

The parties then stipulated that Hanke was ninety-five percent negligent and Anderson five percent contributorily negligent. The matter went to trial on damages only. The jury returned a total damage award of $186,769.50, including awards of $35,104.22 for Anderson's past medical expenses and $5400 for his future medical expenses. Based upon his five percent contributory negligence, Anderson's net award was $177,431.02. American Family paid this amount to Anderson pursuant to its underinsurance obligation. Thus, except for the five percent reduction for his contributory negligence, Anderson has been made whole for his damages, including his medical expenses.

Nonetheless, Anderson sought further payment for his medical expenses under the medical expense coverage section of the American Family policy and under the collateral source rule. In response, American Family argued that the purpose of underinsurance is to make the insured whole. Since Anderson had been made whole, American Family contended that it was not obligated under the medical expense coverage provisions of the policy. The attorneys' arguments at the declaratory judgment hearing were not reported and, without explanation, the trial court ruled for American Family.[4] Anderson appeals.

---

19–21, 383 N.W.2d 876, 882–83 (1986). Following this hearing, American Family waived its subrogation rights against Hanke.

[4] We lament the meager state of the trial court record on two fronts. First, when important trial court arguments of counsel are not reported, we are deprived of information which might be important to the appellate issue. Supreme Court Rule 71.01(2)(c) (Law. Co-op. 1992) provides that "[a]rguments of counsel on motions made during the course of trial" must be

We first examine the insurance contract language. The interpretation of an insurance policy presents a question of law. *Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 264, 499 N.W.2d 233, 234 (Ct. App. 1993). Insurance contracts are controlled by the same rules of construction as are other contracts; the goal is to ascertain the intentions of the parties. *Id.*

The American Family policy is divided into four separate sections, each reciting separate and specific coverages for which Anderson paid a separate premium: liability, medical expense, uninsured motorist,

---

reported. Because the record is so sparse, we cannot say for certain whether the attorneys' arguments at issue here had to be reported under this rule. However, another rule, SCR 71.01 (2)(f) (Law. Co-op. 1992) requires that proceedings "necessary . . . to ensure an adequate record" be reported. We think that the declaratory judgment hearing qualified for reporting under this rule. Second, when the trial court does not explain the basis for its ruling, we again are deprived of a potential source of helpful information regarding the issue. Here, while we can speculate, we do not know for certain why the trial court concluded that American Family should prevail. It may be that the trial court did all that is minimally necessary under the law. *See* sec. 805.17(2), Stats. However, a trial court should understand that its reasoning offers us another voice and perspective on an appellate issue. In some instances, the court's logic offers an independent basis, separate and apart from the respondent's, for affirming the court's ruling. The trial court's failure to explain its reasoning works a deleterious effect in other areas. If the court's reasoning is made known, counsel can then make a better informed decision whether to appeal, sometimes avoiding an appeal. And, perhaps most importantly, we think that the parties are entitled to know *why* someone won and someone lost.

and, by separate endorsement, underinsured motorist coverage.

The medical expense coverage section of the policy includes a subsection entitled "Limits of Liability." This subsection includes the following reducing clause:

> Any amount paid or payable for medical expenses under the *Liability* or *Uninsured Motorists* coverages of this policy shall be deducted from the amounts payable under this Part. [Emphasis added.]

■

It is critical to note that while this reducing clause allows for the deduction of medical expenses paid under the liability and uninsured motorist coverage from any payments made under the medical expense coverage, *it does not provide for such reduction when medical expense payments have been made pursuant to the underinsurance coverage of the policy*. A principle of contract construction holds that specific mention of one or more matters is considered to exclude other matters of the same nature not expressly mentioned. *Goebel v. First Fed. Sav. & Loan Ass'n*, 83 Wis. 2d 668, 673, 266 N.W.2d 352, 355 (1978). When an expression of intent is apparent as to one portion of the agreement, this rule may be extremely useful in determining the intent of the parties as to a related portion. *Park View Manor, Inc. v. Housing Auth.*, 300 N.W.2d 218, 226 (N.D. 1980). Here, by contracting to allow American Family to reduce its medical expense coverage payments for prior liability or uninsured coverage payments which included medical expenses, but failing to so provide

regarding underinsurance payments, the parties have made their intent self-evident.[5]

In addition, the underinsurance endorsement provisions of the policy support our conclusion. Like the medical expense coverage section, this endorsement also has a reducing clause. It allows American Family to reduce its underinsurance payments for: (1) payments made by another legally liable; (2) payments made under the liability provisions of the American Family policy; and (3) payments made pursuant to worker's compensation, disability or similar law. Here again, American Family had the opportunity to utilize language which would allow it to avoid making duplicate medical expense payments to Anderson. But again, as with the medical expense reducing clause, American Family saw fit to write in reducing language only in certain situations, but not with regard to medical expense payments.[6]

Thus, the parties' contract addresses the scope and effect of reducing clauses in various settings. If the parties (especially American Family) had wished to extend the medical expense reducing clause or the underinsurance reducing clause to avoid duplicate payment for medical expenses, they clearly had the opportunity to do so. They did not. Thus, although the result is one we do not necessarily favor, Anderson is entitled to payment of his medical expenses even

---

[5] Even if we were to conclude that the policy is ambiguous on this point, we would resolve the issue against American Family. Doubts and ambiguity regarding coverage must be resolved in favor of the insured. *Rockline, Inc. v. Wisconsin Physicians Serv. Ins.*, 175 Wis. 2d 583, 590, 499 N.W.2d 292, 295 (Ct. App. 1993).

[6] The same is true with regard to the reducing clauses in the uninsured and property damage sections of the policy.

though he has already been made whole pursuant to the underinsurance provisions of the policy.

■

American Family argues that "a policy need not expressly provide that a given coverage shall not duplicate another coverage."[7] However, we do not conclude that in all instances a policy must expressly provide against duplicate coverage. Our holding is only that, *under the language of this particular policy*, where the parties have consciously allowed for a deduction in payments as to certain types of coverage but not as to other kinds of coverage, the intent of the parties is self-evident.

American Family also argues that "[underinsurance] coverage begins only when other insurance resources have been exhausted." We have no quarrel with this statement as a general proposition. However, this argument begs the appellate question of whether an insured is entitled to payment under the medical expense section of the policy where the parties' reducing clause language does not apply to prior underinsurance payments.

American Family also argues that according to *Wood v. American Family Mutual Insurance*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), an underinsurer indemnifies the insured. Thus, American Family reasons that Anderson is not entitled to separate and duplicate payment under the medical expense coverage of the policy.

American Family cites *Wood* out of context as it relates to the issue before us. The supreme court's statement upon which American Family relies was made during the court's discussion of sec. 631.43(1),

---

[7] American Family offers no citation to legal authority for this statement.

Stats., which permits the stacking of other insurance in certain situations. When making this statement, the *Wood* court was considering whether the "drive-other-car" exclusion of an underinsurance policy violated the statute which speaks of insurance policies which "promise to indemnify an insured against the same loss." Section 631.43(1). In this context, it is not surprising that the supreme court said that the policies at issue "promise to indemnify the [insured] against the same loss." *Wood*, 148 Wis. 2d at 650, 436 N.W.2d at 598.

This case is not a stacking case. Nor does it involve sec. 631.43(1), Stats. We do not agree with American Family that this language of *Wood* is relevant to or dispositive of the issue before us.

In fact, other language from *Wood* runs counter to American Family's position. After concluding that the "drive-other-car" exclusion of the underinsurance provision violated sec. 631.43(1), Stats., the supreme court turned to a second issue: whether a reducing clause in the underinsurance provision of the policy precluded recovery. *Wood*, 148 Wis. 2d at 650–51, 436 N.W.2d at 598–99. In this context, which is one much closer to the issue here, the supreme court sounded just the opposite theme: "[underinsurance] promises to *indemnify the underinsured driver....*" *Id.* at 651, 436 N.W.2d at 599 (emphasis added).[8] On this further basis, we conclude

---

[8] In this case, the American Family underinsurance endorsement has a definite tortfeasor indemnification ring to it: "We will pay compensatory damages for bodily injury which an insured person is *legally entitled to recover from the owner or operator* of an underinsured motor vehicle." (Emphasis added.) Thus, American Family's underinsurance obligation to Anderson is directly linked to the legal responsibility of Hanke, the underinsured tortfeasor. Since we hold that the language of the

that American Family's reliance on the language from *Wood* is misplaced.

■

In conclusion, because the provisions of the policy bar duplicate payments in certain situations, but not as to medical expenses, Anderson is entitled to payment under the medical expense coverage provisions of the policy.

We reverse the declaratory judgment.

*By the Court.*—Order reversed.

parties' insurance policy governs the appellate issue, we need not look to the collateral source in this case. However, we do note that the collateral source rule holds that a tortfeasor may not escape responsibility because the claimant has received payment from another source. *See United Fire & Casualty Co. v. Kleppe*, 174 Wis. 2d 637, 643, 498 N.W.2d 226, 229 (1993).

Since we do not employ the collateral source rule in this case, we need not address American Family's further argument that under *United Fire & Casualty Co. v. Kleppe*, 166 Wis. 2d 844, 852, 480 N.W.2d 537, 540 (Ct. App. 1992), *rev'd on other grounds,* 174 Wis. 2d 637, 498 N.W.2d 226 (1993), the collateral source rule cannot apply in an action between an insured and insurer. However, we do not read *Kleppe* to say that the parties cannot contract to allow for duplicate coverage.