Evelyn J. GURNEY, and James Gurney, Plaintiffs-Respondents,††

v.

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Respondent-Co-Appellant,†

WISCONSIN PHYSICIANS SERVICE, Defendant-Appellant.

Court of Appeals

*No. 92–3157. Oral argument September 20, 1993.—Decided March 24, 1994.*

(Also reported in 515 N.W.2d 526.)

††Petition for cross-review denied.
†Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Terry J. Booth* of *Fellows, Piper & Schmidt* of Milwaukee. Oral argument by *Terry J. Booth*.

For the defendant-respondent-co-appellant the cause was submitted on the brief of *Mark S. Henkel* and *David A. Ray* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Stevens Point. Oral argument by *Mark S. Henkel*.

For the plaintiffs-respondents the cause was submitted on the brief of *Daniel G. Golden* and *Robert J. Shannon* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point. Oral argument by *Daniel G. Golden*.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Wisconsin Physicians Service (WPS) appeals from an order dismissing its subrogation claim against Heritage Mutual Insurance Company. Heritage appeals that part of the same order requiring it to pay plaintiffs Evelyn and James Gurney $54,444.33, the cost of Evelyn's medical and hospital treatment. The issues are (1) whether WPS's policy provides a right of subrogation for its payment of Evelyn's medical expenses, entitling it to recover on Evelyn's underinsured motorist coverage with Heritage, and (2) whether the Gurneys may recover on Heritage's underinsured motorist coverage for the amount of Evelyn's medical expenses, even though WPS paid those expenses.

We conclude (1) WPS is subrogated to Evelyn's rights against Heritage and may recover from Heritage the amount WPS paid in medical expenses on Evelyn's behalf, and (2) the Gurneys cannot recover against Heritage for the amount that WPS paid in medical expenses on Evelyn's behalf. We reverse the order before us on appeal.

## I.  FACTS

On October 22, 1988, Evelyn was driving her car with her husband, James, as her passenger, when a car driven by Vicki Mentzel hit Evelyn's car. Mentzel's automobile insurance policy with Midwestern National Insurance Corporation had liability limits of $50,000 per person and $100,000 per accident. Midwestern paid $50,000 to Evelyn and $22,545 to James for their releases. WPS, Evelyn's health insurer, paid $54,444.33 of medical expenses on her behalf. The WPS policy includes a subrogation clause. At the time of the accident Evelyn's two cars were insured by Heritage under a single policy providing underinsured motorist

coverage (UIM) on each car. The UIM coverage is $100,000 per person.[1]

Evelyn suffered $177,954.59 of damages, in addition to the medical expenses paid by WPS. After deducting the $50,000 paid by Midwestern, the trial court entered a judgment in favor of Evelyn against Heritage for $127,954.59. Heritage paid Evelyn that amount and also paid James $3,750 on his claim for lost society and companionship, for a total of $131,704.59.

WPS and the Gurneys assert additional claims against Heritage on its UIM coverage. WPS bases its claim on its payment of $54,444.33 in medical expenses on Evelyn's behalf. The Gurneys claim the right to recover the same $54,444.33 from Heritage on its UIM coverage, notwithstanding WPS's payment of Evelyn's medical expenses. Arbitration resolved the factual issues with respect to both claims. Only issues of law remain: whether WPS and the Gurneys may recover from Heritage on its UIM coverage. The circuit court ruled that WPS cannot recover from Heritage, but the Gurneys may. We conclude that WPS can recover, but the Gurneys cannot.

■

Because the appeal presents only issues of law, the circuit court's conclusions do not bind us. We review the issues *de novo. West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 40, 489 N.W.2d 915, 916 (1992).

---

[1] The Gurneys and WPS refer to two separate policies. The record contains a copy of one policy listing two cars in the declarations.

## II.  WPS SUBROGATION CLAIM

■

When, as here, an insurer seeks "to impose subrogation under an express contractual provision, the [burden of] proof is presumably [to show] the existence . . . and also applicability of the provision." *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 601, 511 N.W.2d 855, 862 (1994). WPS has met its burden.

The WPS policy issued to Evelyn contains a clause which provides in pertinent part:

> Each participant agrees that [WPS] shall be subrogated to the participant's rights to damages, to the extent of the benefits we provide under the policy, for illness or injury a third party caused or is liable for; that such rights shall be, and they are hereby, assigned to us to such extent; and that our subrogation rights shall not be prejudiced by any participant.

Two precedents are pertinent: *Employers Health Ins. v. General Casualty Co.*, 161 Wis. 2d 937, 469 N.W.2d 172 (1991), and *Dailey v. Secura Ins. Co.*, 164 Wis. 2d 624, 476 N.W.2d 299 (Ct. App. 1991). In *Employers*, the health insurer paid medical benefits to its insured on a health policy. Its policy provided that Employers was subrogated to the insured's "right to recover damages from a responsible third party." *Employers*, 161 Wis. 2d at 943, 469 N.W.2d at 174. The insured had been injured in a car accident with an uninsured motorist and had uninsured coverage with General Casualty. Employers asserted a subrogation claim to recover its medical payments from General Casualty on the latter's uninsured coverage. The *Employers* court held that Employers was not entitled to subrogation. The court read "responsible third

party" in the subrogation clause as "clearly refer[ring] to a party responsible for the insured's injury and not to an insurer providing uninsured motorist coverage to the insured." *Id.* at 950, 469 N.W.2d at 177. Because General Casualty was not the tortfeasor, Employer's subrogation clause did not apply. *Id.*

In *Dailey*, an uninsured motorist injured the Dailey family. Dailey's policy with Secura included uninsured motorist coverage. Dailey's health insurer sued Secura to recover payments the health insurer had made for the Dailey family's medical expenses. The health insurer's policy provided that it

> shall be subrogated to the rights, claims, interests and causes of action which the Covered Participant may have against *any party who may be liable* for injury, illness or other loss of the Covered Participant, to the extent that the Company has provided Benefits for such injury, illness or other loss under the Policy.

*Dailey*, 164 Wis. 2d at 628-29, 476 N.W.2d at 301 (alteration in original). We held that the health insurer could recover. We concluded that " 'any party who may be liable' is not limited to wrongdoers. Rather, this phrase includes insurers, who by their contracts are liable to their insureds for their insureds' injuries or losses." *Id.* at 629, 476 N.W.2d at 301.

Heritage contends that because it is not a tortfeasor and the WPS subrogation clause is "fault based," *Employers* controls the result. We disagree. The phrase in *Employers*—"damages from a responsible third party"—identified the parties from whom recovery could be obtained and was fault based. The WPS clause is not fault based. The WPS clause entitling it to subrogation "to the participant's rights to

damages . . . for . . . injury a third party caused or is liable for," identifies the type of loss for which damages can be recovered and not the parties from whom recovery is sought. A person "liable for" damages includes an insurer who is contractually liable.

Heritage asserts that WPS is not an "insured person" under the Heritage policy and therefore cannot recover on the Heritage policy. The insuring clause of the Heritage UIM coverage provides in relevant part:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.

(Emphasis omitted.) The Heritage policy further provides:

> "Insured person" means:
>
> a. You or a relative.
>
> b. Any other person while occupying your insured car.
>
> c. Any person for damages that person is entitled to recover because of bodily injury to you, a relative or another occupant of your insured car.

(Emphasis omitted.)

WPS is an insured person under Heritage's policy. Heritage's UIM coverage defines "an insured person" to include "[a]ny person for damages that person is entitled to recover because of bodily injury to you . . . ." In its UIM coverage, Heritage agrees to pay the "damages" which an insured person is entitled to recover from an underinsured motorist. Heritage has therefore agreed to pay what WPS claims it is entitled to recover. Because Heritage defines an insured person to include

a person entitled to recover damages because of bodily injury to the named insured, WPS is an insured person.

Heritage contends that even if WPS is an insured person, it cannot recover on its subrogation claim from Heritage. Heritage argues that because it paid the Gurneys $131,704.59, its limit of liability for UIM coverage has been exhausted as to WPS. It asserts that, unlike the Gurneys,[2] WPS cannot stack UIM coverage, and therefore the limit of liability is $100,000 rather than $200,000. Heritage contends that the stacking doctrine exists to protect only insureds, such as the Gurneys, and stacking should not be allowed between adverse insurance companies.

Heritage cites *Heritage Mut. Ins. Co. v. St. Paul Mercury Ins. Co.*, 141 Wis. 2d 141, 144-45, 413 N.W.2d 664, 666 (Ct. App. 1987), for the proposition that stacking is not permitted between adverse insurers. We have rejected that reading of *Heritage*. In *State Farm Mut. Auto. Ins. Co. v. Continental Casualty Co.*, 174 Wis. 2d 434, 438-40, 498 N.W.2d 247, 249 (Ct. App. 1993), we concluded that *Heritage* does not stand for the proposition advanced here, and we allowed stacking when prorating liability between two insurers. The argument that stacking exists to benefit only individuals was not made in *State Farm*, but our holding in that case cannot be reconciled with the proposition Heritage advances.

---

[2] An insured who pays separate premiums for each vehicle under a single policy, or under two policies, can stack UIM coverage even if the policy or policies contain a limit of liability clause. *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 41, 489 N.W.2d 915, 916 (1992), *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 647-48, 436 N.W.2d 594, 597-98 (1989).

Finally, Heritage contends that even if WPS enjoys the right to stack, the $50,000 Mentzel's liability carrier, Midwestern, paid to Evelyn reduces Heritage's UIM coverage to $150,000. Heritage relies on the limits of liability provision under its UIM coverage. That paragraph provides in pertinent part, "Amounts payable under this coverage to or for an injured person will be reduced by: 1. A payment made to or for that person by or on behalf of the owner or operator of the underinsured motor vehicle or organization which may be legally liable." (Emphasis omitted.) The same contention was rejected in *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989).

The question in *Wood* was whether a reducing clause in American Family's UIM provision reduced the UIM benefits recoverable under the policy's limit by the amount the insured received from the underinsured driver's liability insurer. *Id.* at 642-43, 436 N.W.2d at 595. The *Wood* court held the UIM benefits were not reduced. The insured had two policies, each included UIM coverage and each contained a reducing clause. The reducing clauses provided, "Any amounts payable will be reduced by: 1. A payment made by the owner or operator of the underinsured motor vehicle or organization which may be legally liable." *Id.* at 644, 436 N.W.2d at 596. The *Wood* court determined that "amounts payable" was ambiguous, and concluded that a reasonable person would understand the amounts payable to be the equivalent of damages compensable. *Id.* at 652-54, 436 N.W.2d at 599-600.

Heritage argues that the *Wood* decision is inapplicable because Heritage's reducing clause provides, "Amounts payable *under this coverage*" will be reduced by the amount the underinsured motorist liability

insurer pays to the Heritage insured. (Emphasis added.) We disagree. The *Wood* court adopted the approach taken by the Ohio court in *Gomolka v. State Auto. Ins. Co.*, 472 N.E.2d 700, 703 (Ohio 1984). The *Wood* court quoted from the *Gomolka* decision as follows:

> When purchasing this [UIM] coverage, an insured expects to be protected against a loss caused by another that is not covered by that other person's insurer. Thus, an "amount payable" under uninsured/underinsured motorist coverage is an *amount of damages suffered* by the insured, which amount is greater than the insurance coverage held by the party causing the damages.

*Wood*, 148 Wis. 2d at 656, 436 N.W.2d at 601. Because the difference between Heritage's reducing clause and the reducing clause in *Wood* is not such as to remove the ambiguity in the term "amounts payable," the *Wood* rationale applies here.

It is worth noting the absurd consequences of Heritage's contention. As the *Wood* court concluded, if "the 'amounts payable' under a UIM policy should be reduced by payments made from the underinsured driver's liability policy, the [company issuing the UIM policy] will *never* pay the policy limits of its UIM policies." *Id.* at 653, 436 N.W.2d at 600. That consequence follows from the $25,000 minimum liability coverage required in an automobile insurance policy issued in Wisconsin. Section 344.33(2), STATS. UIM insurance therefore applies in Wisconsin only when a tortfeasor has at least $25,000 of liability coverage. Hence, if the amount received from a liability insurer reduces recovery under UIM coverage, the UIM insurer will never pay out at least $25,000. For that reason, the *Wood*

279

court aptly characterized a contention like Heritage's as creating an illusory UIM liability limit, "because an insured will never be entitled to recover up to that limit." *Wood*, 148 Wis. 2d at 653, 436 N.W.2d at 600. Another absurd consequence of Heritage's contention is that the UIM policyholder will pay a premium on at least $25,000 of UIM coverage which does not exist.

## III. THE GURNEYS' CLAIM AGAINST HERITAGE

The Gurneys assert that we should affirm the trial court's holding that they are entitled to recover $54,444.33 from Heritage on its UIM coverage, on grounds that (1) WPS is not entitled to recover on its subrogation, (2) our recent holding in *Anderson v. American Family Mut. Ins. Co.*, 178 Wis. 2d 835, 505 N.W.2d 433 (Ct. App. 1993), supports the trial court's holding, and (3) the collateral source rule permits their recovery notwithstanding WPS's payment of that amount on Evelyn's behalf. We disagree.

In *Anderson*, we held that the language of the policy permitted the plaintiff to recover on the medical expense provisions of his American Family policy even though he had been paid his medical expenses under American Family's UIM coverage. *Id.* at 843-44 n.8, 505 N.W.2d at 437. While Anderson argued that he was also entitled to recover by virtue of the collateral source rule, we did not address that issue. *Id.*

Unlike the facts in *Anderson*, the Gurneys' appeal involves an outstanding subrogation. WPS is subrogated to the Gurneys' rights to recover $54,444.33 from Heritage. For that reason, the collateral source rule does not apply. *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987). The *Lambert* court held that the plaintiff could not recover from the tortfeasor the medical expenses her husband's insurer paid on her

behalf when the insurer was subrogated to her claim. *Id.* at 108, 399 N.W.2d at 371. Indeed, the *Lambert* court expressly held that "where subrogation is present, as here, the collateral source rule is inapplicable." *Id.* at 121, 399 N.W.2d at 376.

■

Because we have held that WPS is subrogated to the claim of the Gurneys against Heritage on the latter's UIM coverage for the $54,444.33 WPS paid on Evelyn's behalf, the Gurneys are barred from recovering on that claim from Heritage.

*By the Court.*—Order reversed both as to Wisconsin Physicians Service and Heritage Mutual Insurance Company and matter remanded for further proceedings.