HERITAGE MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,

v.

Galina GRASER, Defendant-Appellant,

Valera SMOKVIN, Defendant.

Court of Appeals

No. 01–2168. Submitted on briefs March 7, 2002.—Decided April 17, 2002.

2002 WI App 125

(Also reported in 647 N.W.2d 385.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Willard P. Techmeier* and *David J. McCormick* of *the Techmeier McCormick Group S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Arthur P. Simpson* and *Gary D. Lippow* of *Simpson & Deardorff, S.C.* of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. Galina Graser and her minor son, Valera Smokvin, appeal from an order granting summary judgment to Graser's underinsured motorist insurance (UIM) carrier, Heritage Mutual Insurance Company. At the center of the controversy is approximately $45,000 in medical expenses that Wisconsin Health Organization (WHO) paid out for injuries Valera suffered when he was struck by a car. WHO has waived its right to subrogation against Heritage for those medical expenses; Graser now contends that the collateral source rule allows her to recover those expenses

under her UIM policy. We affirm· the decision of the circuit court on the basis that the collateral source rule, which finds its genesis in tort law, is inapplicable to claims made by an insured under his or her UIM policy.

¶ 2. Graser also appeals from the circuit court's denial of her motion for reconsideration based upon the recent decision in *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201. We agree with the circuit court that *Koffman* is inapplicable to the facts in this case and affirm its decision to deny the motion.

¶ 3. Valera suffered injuries in a June 22, 1994 accident when his bicycle was struck by a vehicle operated by Jean Fisher. Graser reached a settlement with Prudential, Fisher's liability insurer, for the policy limit of $100,000. WHO accepted $20,000 from Prudential in satisfaction of its subrogation interest for medical expenses.

¶ 4. Graser then filed a claim under her UIM policy issued by Heritage and which carried a limit of $300,000. After an arbitration hearing on January 19, 2001, the panel made the following ruling:

> The award in this matter is the policy limit of $200,000.[1] This is in addition to the $100,000 already paid by the insurance company for the tort-feasor. We also· find that the medical expenses of $79,983.57 to be reasonable and related to the injuries of the claimant. The balance of the award is for the past, present, and future pain and suffering, and future medical expenses. (Footnote added.)

¶ 5. The parties do not dispute that WHO's subrogation interest was $45,217.52. WHO did not appear

---

[1] The Heritage policy had a reducing clause that lowered the available coverage from $300,000 to $200,000, based on the $100,000 provided by Prudential.

at the arbitration proceeding and later communicated to Graser by letter its intent to waive its subrogation claim. On February 26, 2001, Heritage paid Graser $154,782.48 representing payment in full of the arbitration award less the disputed amount of $45,217.52. Graser then claimed that Heritage had improperly withheld a portion of the arbitration award, arguing that WHO's medical expenses claim reverted to Graser as the insured.

¶ 6. On May 11, 2001, Heritage moved for summary judgment, seeking an order confirming that its payment of $154,782.48 satisfied its obligation under the arbitration award. Graser filed a motion for confirmation of a $200,000 arbitration award. On June 27, 2001, the circuit court issued an order granting summary judgment in favor of Heritage and denying Graser's motion for confirmation of the $200,000 arbitration award. Subsequently, Graser moved for reconsideration on the grounds that the supreme court's decision in *Koffman* merited a reversal or modification of the circuit court's order. The circuit court denied the motion and Graser appeals from both the final order and the order denying reconsideration.

■

¶ 7. We review the grant or denial of a summary judgment motion de novo, using the same methodology as the circuit court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (1999–2000).[2]

_____

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 8.   We begin our discussion by reviewing the collateral source rule and the concept of subrogation. *Koffman* contains the supreme court's most recent description of the collateral source rule and its underlying policy:

> Under the collateral source rule a plaintiff's recovery cannot be reduced by payments or benefits from other sources. The collateral source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from inuring to the benefit of a defendant-tortfeasor. The rule is grounded in the long-standing policy decision that should a windfall arise as a consequence of an outside payment, the party to profit from that collateral source is "the person who has been injured, not the one whose wrongful acts caused the injury."

*Koffman*, 2001 WI 111 at ¶ 29 (citations omitted). In other words, the policy basis for the collateral source rule is that the legally responsible tortfeasor should not be relieved of his or her obligation to the victim simply because the victim had the foresight to arrange benefits from a collateral source for injuries and expenses. *Id.*

¶ 9.   The collateral source rule and the principle of subrogation frequently interact in personal injury actions. "By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor." *Id.* at ¶ 33. In a personal injury action, the purpose of subrogation is to ensure that the loss is ultimately placed with the wrongdoer and to prevent the insured plaintiff from becoming unjustly enriched

through a double recovery, i.e., a recovery from the insurer and the liable third party. *Id.*

■

¶ 10.  The collateral source rule and the principle of subrogation are complementary legal concepts that can be applied together to further the goals of both rules. The collateral source rule prevents payments made by the insurer from inuring to the benefit of the defendant, and the insurer's subrogation rights prevent a double recovery on the part of the plaintiff. *Id.* at ¶ 40.

■

¶ 11.  Graser asserts that she is entitled to recover $45,217.52 from Heritage under its UIM coverage on grounds that (1) WHO has waived its subrogated interest in the claim, and (2) in *Anderson v. Garber*, 160 Wis. 2d 389, 402, 466 N.W.2d 221 (Ct. App. 1991), we stated that medical expenses paid by an insurer are properly awarded where the insurer either waives or properly exercises its subrogation right. In addition, in a footnote we added that "[w]here an insurer waives its subrogation rights . . . no subrogation exists, and the collateral source rule applies." *Id.* at 402 n.5. Alternatively, Graser claims that she is entitled to recover $34,766.05 under the UIM policy pursuant to the supreme court's recent decision in *Koffman*.[3]

¶ 12.  Heritage responds that *Anderson* and *Koffman* are inapplicable because they involved negligence actions against tortfeasors rather than claims under UIM policies. Heritage maintains that the policies underlying the award of medical expenses to the plaintiffs in those cases do not apply in this instance because the

---

[3] This figure is the difference between the $79,983.57 medical expenses portion of the arbitration award and the $45,217.52 in medical expenses actually paid by WHO.

need to deter or punish a wrongdoer is not an issue under the UIM policy. As we explain below, we agree with Heritage that the collateral source rule cannot be applied to allow WHO's claim to revert to Graser under her UIM policy.

¶ 13. In *Anderson*, the trial court eliminated the jury award for medical expenses paid by the plaintiff's health insurers. *Anderson*, 160 Wis. 2d at 392. We reinstated the jury award because under the facts of that case, application of the collateral source rule ensured that the negligent actor did not reap the benefit of the health insurance payments made on behalf of the plaintiff. We also noted that the negligent actor was not exposed to multiple obligations because the health insurers' claims had either been assigned, waived or satisfied by the judgment. *Id.* at 401 n.5. In other words, in *Anderson* the collateral source rule served its primary purpose to deter negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor.

¶ 14. More recently, in *Koffman* the supreme court considered the scope of recoverable medical expenses under the collateral source rule. In *Koffman*, the plaintiff's health and automobile insurance carriers paid for his medical expenses arising from an automobile collision. *Koffman*, 2001 WI 111 at ¶¶ 4, 5. The tortfeasor and his insurance carriers argued that the plaintiff's insurers' subrogation rights trumped the collateral source rule, thereby limiting the medical expense damages to the amounts actually paid. *Id.* at ¶ 1. The court in *Koffman* rejected that argument, holding that where the insurers' rights to subrogation were intact, the risk for double recovery on the part of the plaintiff-insured does not exist and "there is no justification for nullifying the collateral source rule." *Id.* at

858

¶ 40. Moreover, the plaintiff was entitled to recover the reasonable value of the medical services rendered without limitation to the amounts actually paid by the insurers on his behalf.[4] Again, application of the collateral source rule ensured that the defendant-tortfeasor did not receive the benefit of the discounted rates paid and that any benefit of reduced payments would inure solely to the plaintiff. *Id.* at ¶ 30.

■

¶ 15. As our discussion of the case law makes clear, the collateral source rule operates where subrogation exists[5] as a means to hold the tortfeasor entirely responsible for the damages caused by his or her conduct. *Anderson* and *Koffman*, which applied the rule

---

[4] In *Koffman*, health care providers billed out $187,931.78 in medical expenses. *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 3, 246 Wis. 2d 31, 630 N.W.2d 201. The primary health insurer was able to satisfy its liability at a reduced contract rate of $62,324. *Id.* at ¶ 4. The court observed that even if the insurer was barred from recouping its payments, the plaintiff's recovery of the reasonable value of medical expenses would simply be reduced by the amounts paid on his behalf in order to prevent a double recovery. *Id.* at ¶ 41.

[5] Where subrogation does not exist, the risk of double recovery may defeat application of the collateral source rule. In *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987), the subrogated insurer paid the entirety of the medical expenses that the plaintiff sought from the defendant. Because the statute of limitations had expired, however, the insurer was unable to exercise its subrogation rights. *Id.* at 117. The *Lambert* court concluded that the subrogated insurer's inability to recoup the amounts paid presented the potential for double recovery. *Id.* at 118–19. Therefore, the defendant was entitled to a credit for payments received by the plaintiff from the collateral source.

to allow awards of medical expenses, must be read in the context in which that public policy arises, namely, personal injury actions.

¶ 16.    The case before us is not a negligence action. There is no tortfeasor (or tortfeasor's insurer) before us to hold accountable or who stands to benefit from the medical payments made by WHO on behalf of Graser. Not surprisingly, our research has uncovered no case law, and Graser cites to none, that holds an insurer's subrogated claim can revert to the plaintiff-insured in an action to recover under a UIM policy.[6] Therefore, we

---

[6] The parties cite to *Gurney v. Heritage Mutual Insurance Co.*, 183 Wis. 2d 270, 515 N.W.2d 526 (Ct. App. 1994), as a UIM case on point. The Gurneys argued the collateral source rule allowed them to recover medical expenses from their UIM carrier. *Id.* at 280. The court rejected their argument holding that their health insurance carrier, which had paid the medical expenses, was subrogated to the claim against the UIM carrier, which effectively barred any claim by the Gurneys. *Id.* at 280–81. Graser asserts that *Gurney* is limited to situations where the subrogated insurer actively pursues its subrogation rights, which is not the case in this appeal. This was not the holding of *Gurney*, however, and we do not agree that an "active pursuit" rule is a "logical extension" of its reasoning.

A more relevant case is *Reed v. Bradley*, 2000 WI App 165, 238 Wis. 2d 439, 616 N.W.2d 916, *review denied*, 2001 WI 114, 246 Wis. 2d 173, 634 N.W.2d 319 (Wis. Aug. 27, 2001) (No. 00–0455). The Reeds were injured in an automobile accident. *Id.* at ¶ 1. Their medical expenses, approximately $2978, were paid by their automobile insurer, State Farm. *Id.* Prior to trial, State Farm settled with the other driver's insurer, American Family, for $2246. *Id.* The jury returned a verdict of $22,978, which included the medical expenses of $2978. *Id.* at ¶ 2. The Reeds agreed that American Family was entitled to a credit for $2246 it had paid to State Farm. *Id.* They maintained, and the court agreed, that the difference between the settlement

860

concur with Heritage's position that the policy of deterrence is not furthered by allowing Graser to recover medical expenses under her UIM policy. The UIM carrier's contract is not with Fisher and would have no penal effect on her. Graser fails to overcome the proposition that there is no reason to invoke the collateral source rule to "punish" an underinsured motorist carrier. Instead, the $154,782.48 payment covers exactly what she contracted for with Heritage—compensation for actual damages without any consideration to the collateral source rule.

¶ 17.  Because we affirm the order for summary judgment in favor of Heritage, we do not reach Graser's counterclaims regarding bad faith and twelve percent interest. Heritage requests that we reverse the circuit court's denial of actual costs and attorney's fees for its defense of Graser's counterclaims. Because Heritage has not cross-appealed on this issue, we decline to address it. *See State v. Huff*, 123 Wis. 2d 397, 407–08, 367 N.W.2d 226 (Ct. App. 1985) (respondent seeking modification of an order must file cross-appeal).

*By the Court.*—Orders affirmed.

amount and the medical expense award—about $731—should revert to them by operation of the collateral source rule. *Id.* at ¶ 3. Significantly, the amount that reverted to the Reeds came from the tortfeasor's insurer, not their own. This is another instance where application of the collateral source rule ensured that the defendant and her insurer would be responsible for the full value of damages caused by the tortfeasor's conduct.