Lindy ORLOWSKI, Petitioner-Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Respondent-Appellant.

Supreme Court

*No. 2009AP2848. Oral argument January 10, 2012.*
*—Decided March 7, 2012.*

2012 WI 21

(Also reported in 810 N.W.2d 775.)

1

For the petitioner-respondent there was a brief by *Kevin J. Kukor, Keith R. Stachowiak, and M. Josef Zimmermann and Murphy & Prachthauser, S.C.,* Milwaukee and oral argument by *Keith R. Stachowiak.*

For the respondent-appellant there were briefs by *Thomas E. Goss, Jr. and Mueller, Goss & Possi, S.C., Milwaukee* and oral argument by *Thomas E. Goss, Jr.*

An amicus curiae brief was filed by *Mark L. Thomsen, Edward E. Robinson,* and *Brett E. Eckstein, Cannon & Dunphy, S.C.,* Brookfield, for the Wisconsin Association for Justice, and oral argument by Edward E. Robinson.

¶ 1. N. PATRICK CROOKS, J. This case is before this court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2009–10). It concerns the proper measure of damages in an action to recover under an injured party's underinsured motorist (UIM) coverage. We resolve this question in the context of the limited scope of review of an arbitration panel's decision.

¶ 2. In this case, the injured party, Lindy Orlowski (Orlowski), submitted a claim to State Farm Mutual Automobile Insurance Company (State Farm) under her UIM coverage after exhausting the policy limits of the underinsured motorist. Pursuant to the arbitration provision in the UIM coverage portion of her policy, Orlowski and State Farm submitted the question of damages to an arbitration panel. The panel concluded that the court of appeals decision in *Heritage Mutual Insurance Company v. Graser*, 2002 WI App 125, 254 Wis. 2d 851, 647 N.W.2d 385, precluded Orlowski from recovering under her UIM coverage the value of medical expenses that were written off by her medical provider.[1]

¶ 3. Orlowski petitioned the circuit court for modification of the arbitration award pursuant to Wis. Stat. § 788.11 (2007–08),[2] arguing that the panel erroneously relied on *Graser*. The circuit court for Milwaukee County, the Honorable Dennis P. Moroney presiding, agreed and modified the arbitration award to include the value of the written-off medical expenses. The court of appeals certified the case to this court because it

---

[1] The written-off medical expenses constitute the value of medical expenses that were waived or forgiven by Orlowski's medical provider as a result of negotiated discounts between the medical provider and Orlowski's health insurer, United Healthcare.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

perceived an irreconcilable conflict between *Graser's* holding that the collateral source rule has no application in UIM cases and this court's precedent on the law of damages and the collateral source rule. Further, the court of appeals noted that Orlowski's policy required the arbitration panel to award the amount that she was "legally entitled to collect" from the underinsured motorist, which is controlled by this court's precedent on the collateral source rule and tort damages.

¶ 4. We reaffirm what our prior precedent has clearly established: an injured party is entitled to recover the reasonable value of medical services, which, under the operation of the collateral source rule, includes written-off medical expenses. We overrule *Graser* to the extent that it holds that the collateral source rule has no application in cases involving UIM coverage. The arbitration panel's decision in this case was properly modified by the circuit court pursuant to Wis. Stat. § 788.10 and § 788.11 because the arbitrators exceeded their authority by failing to fully review and apply this court's decisions on the collateral source rule and the law of damages. Such review and application was required by the questions submitted from the policy language directing the panel to award Orlowski the amount that she was "legally entitled to collect" from the underinsured motorist.

¶ 5. Therefore, we affirm the circuit court's decision modifying the arbitration panel's award to include the reasonable value of Orlowski's medical services.

## I. BACKGROUND

¶ 6. On December 30, 2004, Orlowski was involved in a motor vehicle accident caused by an underinsured driver. Orlowski recovered damages up to the

6

limits of the underinsured driver's insurance. Orlowski had health insurance coverage with United Healthcare, which paid a portion of Orlowski's medical expenses as a result of the accident. She also had an automobile insurance policy with State Farm including UIM coverage.

¶ 7. After exhausting the underinsured motorist's coverage, Orlowski submitted a claim to State Farm to recover under her UIM coverage. Pursuant to the UIM coverage portion of her policy, an arbitration panel was selected to decide two questions: "1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle or underinsured motor vehicle; and 2. If so, in what amount?"[3]

¶ 8. The arbitration panel awarded Orlowski $11,498.55 for medical services provided to her as a result of the accident: $9,498.55 for the medical lien claimed by United Healthcare and $2,000 for Orlowski's out-of-pocket medical expenses.[4] The arbitration panel did not include in its award the amount of Orlowski's medical expenses that had been written off by her medical provider because of discounts through her

---

[3] The arbitration clause in the UIM coverage portion of Orlowski's policy provides that the arbitration panel must answer these two questions. While Orlowski's policy was not submitted to the arbitration panel, both of the parties' arguments are premised on the fact that the arbitration panel was asked to answer only these two questions and also, as a result of State Farm's arguments, asked to decide whether *Heritage Mutual Insurance Company v. Graser*, 2002 WI App 125, 254 Wis. 2d 851, 647 N.W.2d 385, applied. (State Farm Br. at 9–10; Orlowski Br. at 6–7.)

[4] Orlowski was also awarded $2,325 for unreimbursed wage loss and $42,500 for past and future pain, suffering and disability.

health insurance coverage with United Healthcare.[5] The panel did not include these written-off medical expenses in its award because it concluded that the court of appeals decision in *Graser,* 254 Wis. 2d 851, provided that the collateral source rule did not apply to UIM claims and thus did not allow Orlowski to recover these expenses. At Orlowski's request, the arbitration panel submitted a supplemental decision concluding "that the necessary and reasonable value of the medical services provided to Mrs. Orlowski as a result of the accident is [$72,985.94]." The dispute in this case is over the $61,487.39 in medical expenses that were written off by Orlowski's medical provider—the difference between the reasonable value of medical expenses and the $11,498.55 in medical expenses that the panel awarded to Orlowski.

¶ 9. Orlowski petitioned the Milwaukee County Circuit Court for modification of the arbitration award pursuant to Wis. Stat. § 788.11.[6] Orlowski argued that

---

[5] *Written-off medical expenses constitute the expenses* "written off" or waived by a medical provider as a result of negotiated discounts between health insurers and the medical provider. *See Koffman v. Leichtfuss,* 2001 WI 111, ¶ 21, 246 Wis. 2d 31, 630 N.W.2d 201 ("The modern health care system employs a myriad of health care finance arrangements. As part of the system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being 'written-off' by the health care provider."). Written-off medical expenses are the difference between the amount billed for medical services and the amount that the medical insurer pays to satisfy the patient's liability.

[6] Wisconsin Stat. § 788.11 (2007–08) provides in relevant part:

8

the arbitration award must be modified because the arbitration panel improperly interpreted and relied on *Graser,* 254 Wis. 2d 851. State Farm argued that Orlowski had not provided any basis upon which the circuit court could modify the award in accordance with Wis. Stat. § 788.10 and § 788.11. Further, State Farm asserted that the arbitration panel properly applied *Graser.*

¶ 10. The circuit court, the Honorable Dennis P. Moroney presiding, modified the arbitration decision to award Orlowski the full reasonable value of medical expenses, $72,985.94.[7] The circuit court stated that the court of appeals decision in *Graser* failed to give appropriate weight to the "concept of people buying [UIM insurance] for their own protection" to be "made whole" after being injured in an accident caused by an underinsured driver. The circuit court emphasized that allowing Orlowski to recover the full reasonable value of medical services, including written-off medical expenses, is less about the collateral source rule and more

Modification of award. (1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

[7] The circuit court confirmed the remainder of the arbitration panel's decision awarding Orlowski $2,325 for unreimbursed wage loss and $42,500 for past and future pain, suffering and disability.

about giving her the benefit of what she contracted for. The circuit court stated that under Wisconsin law, insureds "have a right to at least be covered to the extent of what they bargained for." The circuit court limited *Graser*'s applicability to only those cases involving recovery based on a waived subrogation right. The circuit court concluded that the arbitration panel's interpretation of *Graser* improperly limits the collateral source rule. The circuit court concluded that the arbitration panel's decision represented a manifest disregard of the law.

¶ 11. State Farm appealed and the court of appeals certified the case to this court for review. The court of appeals was concerned that the way in which the arbitration panel applied *Graser* was in conflict with this court's precedent and the questions asked of the panel from the UIM coverage portion of Orlowski's policy with State Farm. The court of appeals specifically asked this court to resolve "how Wisconsin Supreme Court law in collateral source cases such as *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201, and *Leitinger v. DBart, Inc.*, 2007 WI 84, 302 Wis. 2d 110, 736 N.W.2d 1, [affects] our holding in *Heritage Mut. Ins. Co. v. Graser*, 2002 WI App 125, 254 Wis. 2d 851, 647 N.W.2d 385, where we held that collateral source law is inapplicable to any UIM policy." We accepted the certification.

## II. ANALYSIS

### A. Issues and Standard of Review

¶ 12. This court must address two issues to resolve this case. The first is whether the collateral source rule allows the recovery of written-off medical expenses

10

in a claim under an insured's UIM coverage. This presents a question of law that this court reviews de novo. *See Leitinger,* 302 Wis. 2d 110, ¶ 20.

■

¶ 13. The second question we must answer is whether the arbitration panel's award must be modified in this case. The scope of judicial review of an arbitration decision is very limited. *Racine Cnty. v. Int'l Ass'n of Machinists and Aerospace Workers Dist. 10, AFL-CIO,* 2008 WI 70, ¶ 11, 310 Wis. 2d 508, 751 N.W.2d 312. "The role of the court in reviewing an arbitration award is essentially supervisory in nature. We are to ensure that the parties received what they bargained for when they agreed to resolve their disputes through final and binding arbitration. Courts are guided by the statutory standards in Wis. Stat. §§ 788.10[8] . . . and 788.11[9] and by the standards devel-

---

[8] Wisconsin Stat. § 788.10 provides in relevant part:

Vacation of award, rehearing by arbitrators. (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

[9] *See supra* ¶ 9 n.6.

oped at common law." *Baldwin-Woodville Area Sch. Dist. v. W. Cent. Educ. Ass'n-Baldwin Woodville Unit,* 2009 WI 51, ¶ 20, 317 Wis. 2d 691, 766 N.W.2d 591 (citations and footnotes omitted). The common law standards for overturning an arbitration award have been developed in our case law based on the standards in both Wis. Stat. § 788.10 and § 788.11, and in this case are applied to Orlowski's request to modify the arbitration panel's decision. *See Baldwin-Woodville,* 317 Wis. 2d 691, ¶¶ 20–21; *Racine Cnty.,* 310 Wis. 2d 508, ¶¶ 11, 33; *Emp'rs Ins. of Wausau v. Certain Underwriters at Lloyd's London,* 202 Wis. 2d 673, 680, 552 N.W.2d 420 (Ct. App. 1996).

¶ 14. "If the panel exceeded its power, we must modify or vacate the award." *Emp'rs Ins. of Wausau,* 202 Wis. 2d at 680. "An arbitrator exceeds his or her powers when the arbitrator demonstrates either 'perverse misconstruction' or 'positive misconduct,' when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy." *Racine Cnty.,* 310 Wis. 2d 508, ¶ 11. Whether an arbitration decision must be modified or vacated presents a question of law that this court reviews de novo. *Id.*

¶ 15. Because the scope of the arbitration panel's authority is informed by the arbitration clause in the UIM coverage portion of Orlowski's policy, we also interpret that policy language. The interpretation of an insurance contract is a question of law that this court reviews de novo. *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 24, 251 Wis. 2d 561, 641 N.W.2d 662.

12

## B. The Operation of the
## Collateral Source Rule in UIM Cases

¶ 16. We begin by examining the central question certified to this court by the court of appeals, whether the holding in *Graser,* that the collateral source rule has no application in actions to recover under UIM coverage, is sound. There are several legal doctrines and policies at play that we must examine to determine how they operate in UIM cases.

¶ 17. In Wisconsin, our well-established rule of damages regarding the recovery of medical expenses allows an injured plaintiff to recover "the reasonable value of the medical treatment reasonably required by the injury." *Leitinger,* 302 Wis. 2d 110, ¶¶ 22–23; *accord Koffman,* 246 Wis. 2d 31, ¶ 27; *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 15, 235 Wis. 2d 678, 611 N.W.2d 764. The operation of the subrogation doctrine, while not directly implicated in this case, is relevant in many cases involving the recovery of medical damages. "In the insurance context, subrogation is a derivative right that permits an insurer to step into the shoes of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured)." *Fischer v. Steffen,* 2011 WI 34, ¶ 31, 333 Wis. 2d 503, 797 N.W.2d 501.

¶ 18. Within our law on damages we have adopted the collateral source rule, which provides that "a plaintiff's recovery cannot be reduced by payments or benefits from other sources." *Koffman,* 246 Wis. 2d 31, ¶ 29; *accord Fischer,* 333 Wis. 2d 503, ¶ 30; *Leitinger,* 302 Wis. 2d 110, ¶ 26; *Ellsworth,* 235 Wis. 2d 678, ¶¶ 6–7. The policy justifications for the collateral

source rule have been summarized in a number of ways. Each case emphasizes the policies relevant in that particular case. In this case, we highlight three policies central to the collateral source rule. First, is to deter a tortfeasor's negligent conduct "by placing the full cost of the wrongful conduct on the tortfeasor." *Fischer,* 333 Wis. 2d 503, ¶ 30; *accord Leitinger,* 302 Wis. 2d 110, ¶ 33. Second, is to fully compensate the injured party. *Leitinger,* 302 Wis. 2d 110, ¶ 31 ("The collateral source rule protects plaintiffs by guarding against the potential misuse of collateral source evidence to deny the plaintiff full recovery to which he is entitled."); *see also Fischer,* 333 Wis. 2d 503, ¶ 34. Third, is to allow the insured to receive the benefit of the premiums paid for coverage that he or she had the foresight to purchase. *Voge v. Anderson,* 181 Wis. 2d 726, 733, 512 N.W.2d 749 (1994); *Koffman,* 246 Wis. 2d 31, ¶ 40; *Leitinger,* 302 Wis. 2d 110, ¶¶ 44–45; *Fischer,* 333 Wis. 2d 503, ¶ 30.

¶ 19. In *Graser,* 254 Wis. 2d 851, the court of appeals was confronted with the interplay of the collateral source rule, the law on damages and the subrogation doctrine in the context of a claim to recover under UIM coverage. Galina Graser (Graser) brought suit against her UIM insurer to recover damages for injuries that her son received when his bicycle was struck by an underinsured motorist. *Id.,* ¶¶ 1–5. Graser sought to recover medical damages under her UIM coverage, including the value of medical services paid by her health insurer for which that insurer waived its subrogation right. *Id.*

¶ 20. At issue in *Graser* was whether Graser could recover from her UIM insurer the value of her health insurer's waived subrogation claim based on the collateral source rule. The court of appeals examined the policy basis of the collateral source rule and distin-

14

guished this court's decision in *Koffman* and its own precedent in *Anderson v. Garber*, 160 Wis. 2d 389, 466 N.W.2d 221 (Ct. App. 1991), both negligence cases, from UIM cases on this basis. *Graser*, 254 Wis. 2d 851, ¶¶ 13–16. In distinguishing *Graser* from negligence actions, the court of appeals relied heavily on its conclusion that the policy of deterring negligent conduct, obviously relevant in negligence actions against the tortfeasor, is not present in UIM cases against the injured party's own insurer. *Id.*, ¶ 16. The court of appeals also noted that *Graser* did not cite a single case holding that "an insurer's subrogated claim can revert to the plaintiff-insured in an action to recover under a UIM policy." *Id.* For these reasons, the court of appeals concluded that *Graser* could not recover the medical expenses paid by her health insurer for which her insurer waived its subrogation right. *Id.* The court of appeals went on to hold that "the collateral source rule, which finds its genesis in tort law, is inapplicable to claims made by an insured under his or her UIM policy." *Id.*, ¶ 1.

¶ 21.　State Farm argues that the above language in *Graser* explicitly precludes the operation of the collateral source rule to a recovery under UIM coverage, and thus, precludes an insured from recovering written-off medical expenses from his or her UIM insurer. State Farm asserts that there is no conflict between *Graser* and this court's precedent. According to State Farm, *Graser* properly distinguished this court's case law in the negligence context and concluded that the public policy rationale behind the collateral source rule, to deter tortfeasors, is not relevant where an injured party seeks to recover from his or her UIM insurer.

¶ 22.　Orlowski argues that *Graser* was wrongly decided and must be overruled because it ignored this court's precedent, the UIM policy language here and the

15

reasonable expectations of an insured in purchasing UIM coverage. Further, Orlowski asserts that *Graser* is internally inconsistent because the court of appeals stated that the collateral source rule does not apply in UIM cases, despite the fact that part of Graser's recovery that was upheld by the court of appeals included written-off medical expenses. Orlowski directs us to other public policies underlying the collateral source rule—giving an insured the benefit from premiums paid and fully compensating the injured party—that she argues justify its application in UIM cases. State Farm's position on the public policy rationale behind the collateral source rule is too narrow, Orlowski argues.

¶ 23. We conclude that the policy distinction between negligence and UIM cases upon which the court of appeals relied does not justify diverging from our case law and limiting the collateral source rule. The holding in *Graser* that was addressed to the specific factual scenario in that case is not implicated here, where the dispute centers on written-off medical expenses and not a waived subrogation right.[10] The potentially troublesome language in *Graser* is the court of appeals' sweeping statement that "the collateral source rule, which finds its genesis in tort law, is inapplicable to claims made by an insured under his or her UIM policy." 254 Wis. 2d 851, ¶ 1. This holding is at odds with Wisconsin law on damages, the collateral source rule, and the purpose and function of UIM coverage.

[10] Orlowski's health insurer, United Healthcare, maintained its subrogated interest in Orlowski's recovery under her UIM coverage. United Healthcare received its subrogated interest, $9,498.55, in the arbitrators' award.

16

¶ 24. We have explained that the proper measure of medical damages is "the reasonable value of medical services rendered." *Koffman,* 246 Wis. 2d 31, ¶ 27. In *Koffman,* this court held that a plaintiff could recover the reasonable value of medical services, which was the amount billed for medical services related to the tortious conduct, including the written-off medical expenses, and not limited to what was paid for those services. *Id.,* ¶ 2. In *Leitinger,* decided after *Graser,* we explained the import of *Koffman:* "[T]he collateral source rule is specifically designed to prevent a discount received by a plaintiff's insurance company from affecting the plaintiff's recovery of the reasonable value of medical services rendered." *Leitinger,* 302 Wis. 2d 110, ¶ 44. The *Leitinger* court concluded that by operation of the collateral source rule, parties were precluded from introducing evidence of the amount actually paid for medical services to prove the reasonable value of such services. *Id.,* ¶ 75. While these were not UIM cases, we did not limit these principles of the law of damages or the collateral source rule to solely negligence actions. Rather, our case law on the collateral source rule has relied on several public policy considerations that are implicated whether the injured party is seeking recovery under UIM coverage or in a negligence action against the tortfeasor. *See, e.g., Koffman,* 246 Wis. 2d 31, ¶¶ 29–32, 40; *Leitinger,* 302 Wis. 2d 110, ¶¶ 26–34.

¶ 25. As we explained above, the collateral source rule furthers several public policy considerations, including the deterrence of negligent conduct, fully compensating injured parties and giving the insured the benefit of premiums he or she paid. *See supra* ¶ 18. It appears that the court of appeals in *Graser,* 254 Wis. 2d 851, ¶¶ 15–16, gave too much weight to the deterrence rationale, at the expense of the other public policies

17

served by the collateral source rule that are still relevant in the UIM context.

¶ 26. Ensuring that a person injured by tortious conduct is fully compensated is no less important in a UIM case than it is in a negligence action. We reiterated in a significant UIM case the importance of compensating those injured by tortious conduct. *Gillette,* 251 Wis. 2d 561, ¶¶ 64–65. In reaching our conclusion in *Gillette* that the Wisconsin law of damages should control in a UIM case where choice-of-law was at issue, we noted that "[a]lthough the *deterrent purpose* of tort law is not furthered by applying the Wisconsin law of damages to the present case, the *compensatory purpose* of tort law is furthered by applying the Wisconsin law of damages." *Id.,* ¶¶ 64, 67 (footnote omitted)(emphasis added). We noted that this result furthered "Wisconsin's significant interests in fully compensating victims of ordinary negligence." *Id.,* ¶ 65.

¶ 27. Allowing an insured to reap the benefits of the premiums he or she paid is particularly relevant to the recovery of written-off medical expenses under UIM coverage. To ensure full coverage, the injured party has paid two premiums: (1) to a health insurer for coverage for medical expenses including the benefit of having some of those medical expenses written off by the medical provider, and (2) to an automobile insurer to be indemnified for damages, including medical expenses, caused by an underinsured motorist. State Farm asserts that applying the collateral source rule in this case, where Orlowski seeks to recover under her UIM coverage, would give her a "windfall" or double recovery. To the contrary, Orlowski has paid a premium to United Healthcare for the benefit of coverage for medical expenses, and to State Farm to recover the reasonable value of her medical expenses under her UIM coverage.

Since Orlowski has paid a premium for both of these policies, she should receive the benefit from both.

¶ 28. State Farm argues that we should uphold *Graser* because "the foundation for the court's holding [in *Graser*] was public policy considerations." Such an argument is too narrow and thus unsound, and we now overrule *Graser* to the extent that it created a blanket rule that the collateral source rule does not apply to an injured party's UIM action.[11]

## C. The Arbitration Panel's Award

¶ 29. We next address whether the arbitration panel's award must be modified in this case. The circuit court modified Orlowski's award to include the full reasonable value of medical expenses, including those written off by her medical provider. State Farm argues that the circuit court exceeded the limited scope of judicial review of arbitration decisions by modifying the panel's award. State Farm emphasizes that reviewing courts may not substitute their judgment for that of the arbitration panel and asserts that the arbitration panel correctly interpreted the law in a manner consistent with its UIM policy. State Farm further argues that a reduction clause, specifically subsection 2.b. in the

---

[11] *Graser*'s fact-specific holding, that a health insurer's waived subrogation claim does not revert to the insured for the purpose of a UIM recovery, is not implicated here. Arnold P. Anderson's treatise on insurance contains a concise summary of his narrow reading of *Graser* that is not affected by our decision in this case: "[W]hen subrogation does not exist, the risk of double recovery may defeat application of the collateral source rule." Arnold P. Anderson, *Wisconsin Insurance Law* § 4.61, at 64 (6th ed. 2010). Only *Graser*'s broad language—that the collateral source rule is not applicable to a UIM recovery—must be overruled in this case. Therefore, we do not address the validity of *Graser*'s fact-specific holding.

limits of liability section of Orlowski's UIM coverage, allows the recovery of damages "sustained, but not recovered," which State Farm contends excludes written-off medical expenses.

¶ 30. Orlowski argues that the arbitrators exceeded the scope of their authority because the questions asked of the panel from the UIM policy directed the arbitrators to award her what she was "legally entitled to collect" from the tortfeasor, which includes all damages available under Wisconsin tort law. Additionally, Orlowski asserts that the arbitrators' interpretation of *Graser* was a manifest disregard of the law because *Graser* is factually and legally distinguishable. Finally, Orlowski argues that subsection 2.b. in the limits of liability of her UIM coverage does not preclude her recovery of written-off medical expenses. According to Orlowski, if this subsection were interpreted as such it would be an invalid reducing clause as it is not authorized by Wis. Stat. § 632.32(5)(i).[12]

¶ 31. Arbitrators' authority is circumscribed by the terms of the contractual agreement to arbitrate and any other issues that the parties agree to submit to arbitration. *Maryland Cas. Co. v. Seidenspinner,* 181

---

[12] Wisconsin Stat. § 632.32(5)(i) provides:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2. Amounts paid or payable under any worker's compensation law.

3. Amounts paid or payable under any disability benefits laws.

20

Wis. 2d 950, 956, 512 N.W.2d 186 (Ct. App. 1994); *Emp'rs Ins. of Wausau,* 202 Wis. 2d 673, 680–81. State Farm asked the arbitration panel to exclude written-off medical expenses from the award based on *Graser.* Orlowski disputed that *Graser* applied and argued that even if it did, *Graser* permitted the recovery of written-off medical expenses.[13]

¶ 32. The arbitration clause in the UIM coverage portion of Orlowski's policy[14] directed the arbitration panel to decide two questions. Specifically, the policy provides:

Deciding Fault and Amount

Two questions must be decided by agreement between the insured and us:

1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle or underinsured motor vehicle; and

---

[13] The parties dispute whether the scope of the arbitration panel's authority permitted it to address and apply *Graser.* We do not need to address further whether the arbitration panel was permitted to examine and apply *Graser* because we conclude that the arbitration panel's decision must be modified not only because of its reliance on *Graser,* but more significantly because it failed to apply this court's precedent on the collateral source rule and damages in the manner required by the questions submitted to it.

[14] Orlowski's policy includes the relevant underinsured motorist coverage:

We will pay damages for bodily injury an insured is *legally entitled to collect from the owner or driver of an underinsured motor vehicle.* The bodily injury must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.

(Emphasis added and italics in original omitted.)

2. If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.

(Italics and bolding in original omitted.)

¶ 33. We interpret the arbitration clause in Orlowski's insurance policy as we would any other contract, and the objective is to give effect to the parties' intent. *State Farm Mut. Auto. Ins. Co. v. Bailey,* 2007 WI 90, ¶ 22, 302 Wis. 2d 409, 734 N.W.2d 386. Courts interpret a policy consistent with the common, ordinary meaning of the language—in other words, "what the reasonable person in the insured's position would understand it to mean." *Id.* As we stated previously, our review is de novo. *Gillette,* 251 Wis. 2d 561, ¶ 24.

¶ 34. The arbitration clause in Orlowski's policy directed the arbitration panel to decide, first, whether Orlowski was "legally entitled to collect damages from" an underinsured motorist. If so, the award is governed by the second question: "in what amount?" The second question clearly refers to the first. Thus, a reasonable insured would read the arbitration clause to require the panel, if it answers the first question in the affirmative, to award the "amount" that the injured insured is "legally entitled to collect" from the underinsured motorist. The common, ordinary meaning of the amount that an insured is legally entitled to collect from the underinsured motorist is the amount that he or she could recover in a tort action against the underinsured motorist. In *Gillette,* we interpreted the same language —"legally entitled to collect"—in the context of the UIM policy at issue in that case to mean that "an insurance company will compensate an insured for damages for

22

bodily injury that the insured actually incurs up to the amount of damages for which a driver of an underinsured motor vehicle is liable under the applicable law up to the policy's liability limits." *Id.,* ¶ 48. Similarly, in this case, the amount that the insured is legally entitled to collect from the driver of an underinsured motor vehicle is based on the policy language construed in conformity with Wisconsin's tort law on damages including the collateral source rule.

¶ 35. Our relevant precedent is outlined above in greater detail, but we reiterate a few central principles. In *Leitinger* we explained that "[t]he proper measure of damages for medical treatment rendered in a personal injury action is the reasonable value of the medical treatment reasonably required by the injury." 302 Wis. 2d 110, ¶ 23. We further explained that "[t]he value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person." *Id.* Consistent with these principles and the operation of the collateral source rule, we have repeatedly held that an insured may recover the full reasonable value of medical services including the value of any written-off medical expenses. *See, e.g., Ellsworth,* 235 Wis. 2d 678, ¶ 22; *Koffman,* 246 Wis. 2d 31, ¶ 56; *Leitinger,* 302 Wis. 2d 110, ¶ 75.

¶ 36. Contrary to the questions submitted to the arbitrators and extensive precedent from this court that guides how those questions should be answered, the arbitration panel did not award the reasonable value of medical expenses. The arbitration panel concluded "that the collateral source rule does not apply as per the case of *Heritage Mut. Ins. Co. v Graser,*" and on that basis did not award Orlowski the full reasonable value of medical services, which it determined in a supplemental decision was $72,985.94. Instead, the

panel awarded Orlowski $11,498.55 for medical services provided to her as a result of the accident. The panel excluded $61,487.39 from the award, the amount of the written-off medical expenses.

¶ 37. The arbitration panel's decision to exclude written-off medical expenses from Orlowski's award was based almost entirely on its interpretation of *Graser.* The only reasonable conclusion to draw from the panel's reliance on *Graser* and its refusal to award Orlowski the reasonable value of medical expenses as case law requires is that the panel failed to review and apply our case law to resolve the specific, limited questions that the policy's arbitration clause directed it to answer. While our review of arbitration decisions is very limited, it is not meaningless; "arbitration awards are ultimately subject to the governing law." *Lukowski v. Dankert,* 184 Wis. 2d 142, 151, 515 N.W.2d 883 (1994). We will reverse the decision of the arbitrators when the arbitrators fail to examine and apply the relevant law. We have done so recently when an arbitrator made her decision without considering the relevant case law and statutes. *Racine Cnty.,* 310 Wis. 2d 508, ¶¶ 33–37.

¶ 38. We are mindful that the purpose of our review is "to ensure that the parties received what they bargained for when they agreed to resolve their disputes through final and binding arbitration." *Baldwin-Woodville,* 317 Wis. 2d 691, ¶ 20. As we have previously explained, in agreeing to binding arbitration "the parties had a legitimate expectation that the governing law would be followed and applied properly." *Lukowski,* 184 Wis. 2d at 152. "When there is no contractual language that would allow for the arbitrator's construction, there is no reasonable foundation for the award." *Baldwin-Woodville,* 317 Wis. 2d 691, ¶ 23.

24

¶ 39. In this case, the arbitrators exceeded their authority and manifestly disregarded the law without a reasonable foundation by not fully reviewing and applying this court's decisions on the collateral source rule. The panel's seemingly exclusive reliance on *Graser*, resulting in a failure to award written-off medical expenses, cannot be reconciled with its obligation to answer the questions submitted to the arbitration panel that required it to examine tort law on the collateral source rule and medical damages. Given our case law and the questions submitted to the panel, there is no reasonable foundation upon which the arbitrators could have failed to include written-off medical expenses in the award. Therefore, the award of the arbitration panel must be modified because the panel exceeded its authority and manifestly disregarded the law when it failed to award the reasonable value of medical services without a reasonable legal basis.[15]

---

[15] As noted previously, State Farm argues that subsection b of the reducing clause in the "Limits of Liability" section of Orlowski's policy, including only damages "sustained, but not recovered," precludes the recovery of written-off medical expenses. State Farm asserts that this clause provides a basis to affirm the arbitration panel's decision. However, as we explained above, the arbitration clause in Orlowski's policy directed the panel to determine the amount that Orlowski was "legally entitled to collect" from the underinsured motorist. In this case, the amount of the award is controlled by our case law on the collateral source rule and damages, as well as the language of the policy concerning what she was "legally entitled to collect." The arbitration clause did not ask the arbitration panel to decide the effect of the reducing clause. Both parties asserted before this court that a copy of Orlowski's policy was not submitted to the panel. While parties to arbitration may submit additional issues to arbitrators to decide, the parties did

## III. CONCLUSION

¶ 40. We reaffirm what our prior precedent has clearly established: an injured party is entitled to recover the reasonable value of medical services, which, under the operation of the collateral source rule, includes written-off medical expenses. We overrule *Graser* to the extent that it holds that the collateral source rule has no application in cases involving UIM coverage. The arbitration panel's decision in this case was properly modified by the circuit court pursuant to Wis. Stat. § 788.10 and § 788.11 because the arbitrators exceeded their authority by failing to fully review and apply this court's decisions on the collateral source rule and the law of damages. Such review and application was required by the questions submitted from the policy language directing the panel to award Orlowski the amount that she was "legally entitled to collect" from the underinsured motorist.

¶ 41. Therefore, we affirm the circuit court's decision modifying the arbitration panel's award to include the reasonable value of Orlowski's medical services.

*By the Court.*—The order of the circuit court is affirmed.

---

not ask the panel to determine the effect of the reducing clause on the limits of liability in Orlowski's policy in this case. *See Milwaukee Prof'l Firefighters, Local 215, IAFF, AFL-CIO v. City of Milwaukee,* 78 Wis. 2d 1, 16, 253 N.W.2d 481 (1977). Therefore, because we review the decision of the arbitration panel, which was not asked to go beyond the scope of the questions submitted to determine the limits of Orlowski's policy, we do not address the effect of the reducing clause any further.